**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**STEPHANIE BAJZIK,**

      **Plaintiff,**

**vs.**                                    **CASE NO. 3:20-CV-05953-AW-MAF**

**KILOLO KIJAKAZI,
Acting Commissioner of
Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's Title II application for Supplemental Security Income (SSI). After careful consideration of the record, for the reasons stated below, the decision of the Commissioner should be AFFIRMED.

### I.  Procedural History

On or about September 21, 2017, Plaintiff, Stephanie Bajzik, filed an application for Supplemental Security Income alleging her disability began

on May 20, 2017.[1] Tr. 16, 227-32.[2] Plaintiff alleged she became disabled because of PTSD, panic attacks, depression, borderline personality disorder, IBSD, GERD, hiatal hernia, and arrhythmia. Tr. 106.

On January 8, 2018, the agency initially denied Plaintiff's claim and again upon reconsideration on May 17, 2018. Tr. 124-26, 130-35. Plaintiff requested an administrative hearing. Tr. 136. On December 27, 2019, Administrative Law Judge (ALJ), Tracy Guice, presided over the hearing; where Plaintiff was present and represented by counsel. Tr. 38-64. Plaintiff and James Cowart, an impartial vocational expert (VE), testified at the hearing. Tr. 43-60 (Plaintiff's testimony); Tr. 60-62 (Cowart's testimony); Tr. 322-23 (Cowart's resume). The ALJ held a supplemental hearing by telephone on June 5, 2020, because, after the initial hearing, additional evidence was submitted for consideration. Tr. 65-84. Plaintiff was again represented by counsel. Id. Plaintiff and Jody Skinner, an impartial VE, testified at the hearing. Tr. 74-79 (Plaintiff's testimony); Tr. 79-82 (Skinner's testimony); Tr. 332-33 (Skinner's resume).

---

[1] Plaintiff indicates in her memorandum she filed her SSI application on October 5, 2017. ECF No. 17, p. 5. However, at the supplemental hearing, Plaintiff amended the filing date. Tr. 72.

[2] Citations to the transcript/administrative record, ECF No. 12, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

At the initial hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims, specifically, B-1A through B-7A, B-1B through B-15B, B-1D through B-10D, B-1E through B-18E, and B-1F through B-20F. Tr. 41. At the supplemental hearing, the ALJ admitted exhibits B-1A through B-28F. Tr. 70. Exhibit B29F was submitted after the supplemental hearing and was admitted. Tr. 17.

On July 1, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. Tr. 16-32. The ALJ purportedly considered "all the evidence," including Plaintiff's medical records, and found that Plaintiff was not disabled. Tr. 17, 26. Plaintiff requested a Review of Hearing Decision on or about July 14, 2020. Tr. 221-23. On November 6, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 7-9. Plaintiff filed her complaint with this Court on November 23, 2020. ECF No. 1. The Commissioner filed an Answer on June 30, 2021. ECF No. 14. The parties filed memoranda of law, which have been considered. ECF Nos. 17, 19.

## II.    Plaintiff's Claims

Plaintiff argues that the ALJ erred by failing to accord the proper weight to the opinions of Plaintiff's treating physician, Dr. Fares Hakim, and failed to provide good cause in denying her claim for SSI benefits. Id., pp. 2,

9-14. The ALJ also failed to articulate explicit and adequate reasons for discrediting Plaintiff's severe gastrointestinal symptoms. Id. The ALJ's residual functional capacity (RFC) determination is not based upon substantial evidence. Id. The ALJ did not include in the RFC that Plaintiff required "reasonable access to restroom facilities." Id., p. 9. The medical evidence does not support the ALJ's RFC finding because it is inconsistent with the limitations set forth by Dr. Hakim, Plaintiff's testimony, and the medical evidence as a whole. Id., p. 11.

Plaintiff believes the ALJ must give the treating physician's opinion substantial or considerable weight unless good cause is shown to the contrary and the ALJ clearly articulates explicit and adequate reasons for discrediting her allegations. Id., pp. 11-12. Plaintiff relies primarily on Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) and Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Id. The ALJ did not address all parts of Dr. Hakim's opinion that Plaintiff needed three to four unscheduled restroom breaks during an eight-hour workday because of her severe gastrointestinal issues. Id., p. 12. Plaintiff claims that her need for ready access to a restroom and unscheduled restroom breaks during the workday affects her ability to work. Id. Plaintiff argues that the ALJ's failure to address this specific limitation deemed necessary by Dr. Hakim, Plaintiff's long-time treating

physician, and because the RFC does not make this accommodation, a remand is warranted. Id., pp. 13-14.

## III.  Commissioner's Claims

The Commissioner argues that because Plaintiff filed her claims after March 27, 2017, the ALJ applied a new set of regulations, 82 Fed. Reg. 15, 132 (Mar. 27, 2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017). ECF No. 19, pp. 4-5. The new regulation revised the definition of medical opinions considerably and significantly altered how the agency considers medical opinions and prior administrative medical findings which were filed on or after March 27, 2017. Id., pp. 6-7. The "treating source rule" (also known as the treating physician rule) that required deference to the treating source opinion evidence was not retained. Id., p. 7.

Accordingly, the Commissioner argues that under the new regulation "the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources. 20 C.F.R. § 416.920c(a) (2017).'" Id. Although the ALJ must articulate his or her consideration of the medical opinions, the new regulations no longer mandate particularized procedures. Id., p. 8. There is no requirement that the ALJ "give good reasons" for the weight given to a treating source opinion.

Id. The ALJ focuses on the persuasiveness and certain factors (supportability, consistency, relationship with the claimant, specialization, and other factors). Id., pp. 8-9. The ALJ only had to evaluate Dr. Hakim's medical opinions in accordance with the new regulations, which removed the treating physician rule. Id., p. 16. Because the ALJ properly evaluated the medical opinions, the Commissioner's decision should be upheld. Id.

Plaintiff's argument that additional RFC restrictions were warranted based on other evidence in her record fails because the issue is whether substantial evidence supports the ALJ's findings. Id. Thus, Plaintiff cannot just point to evidence that supports her position, she must show the absence of substantial evidence supporting the ALJ's conclusion. Id., pp. 16-17.

The Commissioner makes one final argument: regardless of prior standards, the new regulatory framework (20 C.F.R. § 404.1520c (2017)) governs and is within the agency's exceptionally broad rulemaking authority. Id., pp. 10-12. The Court acknowledges that this issue is no longer debatable. The Eleventh Circuit Court of Appeals recently concluded that the new regulation was within the scope of the Commissioner's rulemaking authority, was not arbitrary and capricious, and validly abrogated the treating source rule. Harner v. SSA, 38 F.4th 892, 896 (11th Cir. 2022).

The Commissioner asks the Court to affirm the ALJ's decision because

it is supported by substantial evidence. Id., p. 17.

## IV.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment

---

[4] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2). the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and

resolve conflicts that might appear. 20 C.F.R. § 404.1527.

Prior to 2017, an ALJ was required to give the treating physician's opinion "substantial or considerable weight unless 'good cause' was shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 128 F.3d 1436, 1440 (11th Cir. 1997). This is no longer the case. In 2017, the Commissioner issued a new regulation, 20 C.F.R. 1520c, which abrogated the "treating physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022). For SSI and disability insurance applications filed after March 27, 2017, an ALJ "must 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.' 20 C.F.R. § 404.1520c(a)." Harner, 38 F.4th at 897. Instead, the ALJ "must weigh medical opinions based on their persuasiveness. Jones v. Soc. Sec. Admin., 2022 U.S. App. LEXIS 22856 at *2, 2022 WL 3448090 (11th Cir. Aug. 17, 2022).

Several factors determine what weight to give to medical opinions. The ALJ considers: 1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim

or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Because supportability and consistency "are the most important factors," the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3).

If the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Soc. Sec. Admin. Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

## V.    Legal Analysis

### A. Findings of the Administrative Law Judge

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2017, the amended alleged onset date.

Tr. 18. The ALJ found that Plaintiff had "the following severe impairments: tachycardia and a history of syncope; irritable bowel syndrome; gastroparesis; cervical degenerative disc disease and cervicalgia; carpal tunnel syndrome; and migraine headaches." Tr. 19. Plaintiff does not appear to contest these findings.

The ALJ also found that Plaintiff had other impairments that do not result in work-related limitations nor was there any indication of "significant symptoms" or "that they were not treated successfully." Tr. 19. Furthermore, the ALJ determined that Plaintiff's mental impairments did "not cause more than minimal limitations in [her] ability to perform basic mental work activities," were "nonsevere," and "occurred prior to the relevant period." Id. Plaintiff does not appear to contest this determination.

The ALJ made other findings. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. Specifically, the ALJ stated "objective medical tests show . . . only mild left median neuropathy across the wrist. There is no indication that this mild condition is affecting the . . . ability to perform fine or gross motor movements." Id. In addition, there was no evidence of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with

pseudoclaudication"; and Plaintiff's arrhythmias and tachycardia were "controlled following a radiofrequency ablation procedure" with "no documented episodes of recurrent syncope or near syncope." Tr. 21. Plaintiff's migraine headaches and the associated symptoms did not meet any part of listing 11.00. Tr. 22. Plaintiff does not object to any of these findings.

The ALJ also considered Plaintiff's inflammatory bowel disease (IBD), which "is the closest listing category to [her] diagnosed Crohn's disease." Id. The ALJ outlined the requirements under this listing:

> . . . a diagnosis of . . . (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with A.) Obstruction of stenotic areas . . . in the small intestine or colon with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period; or B) two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period: 1. Anemia with hemoglobin of less than 10.0 g/dl, present on at least two evaluations at least 60 days apart; or 1. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60

days apart; or 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI present on at least two evaluations at least 60 days apart; or 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Tr. 21.

The ALJ determined that Plaintiff's condition did not meet the requirements because her "gastrointestinal symptoms are described as being under 'good control.'" Tr. 22. It appears that Plaintiff is contesting this finding.

The ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she "cannot climb ladders, ropes, or scaffolds . . . can frequently handle and finger . . . is precluded from concentrated exposure to extreme heat and cold . . . is precluded from exposure to vibrations and cannot work around unprotected heights or dangerous machinery. . . [and] driving automotive equipment." Tr. 22. Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22-23. The ALJ did not defer or give any specific evidentiary weight, including controlling weight to any medical

opinions, including the treating physicians. Tr. 24. The ALJ considered the Gastroparesis Medical Assessment Form completed by Dr. Hakim on November 19, 2019, but did not find it persuasive "because it was inconsistent with the objective medical tests and treatment notes which show her condition is managed well with minimal intervention . . . weight loss is the result of dietary changes she made in order to improve her health and gastrointestinal issues, and her ability to exercise regularly, including running." Tr. 24.

The ALJ found that Plaintiff can return to her past relevant work as a waitress and receptionist. Tr. 24. This determination was due following consideration of the VE's testimony that Plaintiff "could perform all past work as she performed the work and as performed in the national economy." Tr. 25. Plaintiff was a "younger individual," had "at least a high school education, and can communicate in English." Id. However, "transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules as a framework supports a finding that . . . [Plaintiff] is 'not disabled,' whether or not . . . Plaintiff has transferable job skills." Id. Also, "[c]onsidering [Plaintiff's age, education, work experience, and residual functional capacity, there are also jobs that exist in significant numbers in the national economy that . . . [she] can perform." Id. In short,

because Plaintiff can perform light work with some exceptions, she was not disabled. The VE testified that considering all of the factors, Plaintiff is able to perform the following occupations: information clerk, counter clerk, and office helper. Tr. 25-26.

Finally, the ALJ determined Plaintiff "has not been under a disability as defined in the Social Security Act, since September 21, 2017." Tr. 26.

B. The ALJ did not err in failing to apply the treating physician rule to Dr. Hakim's medical opinion.

Plaintiff argues that the ALJ failed to apply the treating physician rule and articulate the requisite good cause to discredit Dr. Hakim's opinions or otherwise did not provide a sufficient rationale for her refusal to do so. ECF No. 17, pp. 11-12. The Commissioner maintains that the treating physician rule was abrogated by the new regulation. ECF No. 19, pp. 4-11. Because Plaintiff applied for benefits after March 27, 2017, the new regulation controls. Plaintiff's argument is squarely foreclosed by the Eleventh Circuit's decision in Harner. No deference or specific evidentiary weight can be given to any medical opinion under the new regulation. Harner, 38 F.4th at 897. The ALJ weighs the medical opinions based on persuasiveness. Jones v. Soc. Sec. Admin., supra. Plaintiff's reliance on earlier case law is misplaced. The new regulation, along with the Harner decision, abrogated the earlier Eleventh Circuit precedents applying the treating-physician rule. Jones v.

Soc. Sec. Admin., 2022 U.S. App. LEXIS 22856 at *2, 2022 WL 3448090 (11th Cir. Aug. 17, 2022). Accordingly, the ALJ committed no error in this regard. The remaining issue of whether substantial evidence supports the ALJ's decision is addressed below.

### C. The ALJ Considered the Medical Evidence of Record in Assessing Plaintiff's Residual Functional Capacity.

Plaintiff's medical records are summarized in chronological order below. Because Plaintiff only challenges the ALJ's determination of her gastric conditions, only those records most relevant are discussed below.

#### 1. Plaintiff's Medical Records - 2017

On February 18, 2017, Plaintiff reported to the emergency room of Sisters of Charity Hospital (SOCH-ER) for pain associated with temporomandibular joint (TMJ) pain, at which time, her body mass index was 31.89. Tr. 486. Plaintiff returned on February 23, 2017, again for TMJ pain, but notably, she denied any nausea and vomiting. Tr. 488. Plaintiff presented to the SOCH-ER on May 6, 2017, complaining of chest pain. Tr. 499-505. Upon examination, Plaintiff's "abdomen/GI" was "soft, non-tender, with normal bowel sounds. No guarding or rebound." Tr. 501.

Three months later, on May 18, 2017, Plaintiff presented to Jericho Road Community Health Centers (Jericho Road) reporting she "always struggled with abdominal issues . . . had EGD's and colonoscopies . . .

epigastric pain and persistent diarrhea . . . and intermittent nausea without vomiting." Tr. 535. Among other issues, Plaintiff was diagnosed with epigastric pain and morbid obesity. Tr. 537-38. Plaintiff was provided with a referral for GI care; was advised to follow a bland diet until her symptoms resolved, exercise thirty minutes per day at least four days per week, avoid sugar, and limit portion sizes; received dietary counseling; and lab work was ordered. Tr. 537-38. Less than one week later, on May 24, Plaintiff returned to Jericho Road, this time for a cough. Tr. 539. Her "[b]owel sounds [were] normoactive. Abdomen [was] nontender." Tr. 539, 542. At an appointment a few days later, on May 31, Plaintiff stated she was "feeling well in general . . .[was] eating and drinking well," denied gastrointestinal symptoms and admitted to being currently sexually active. Tr. 541-42. On June 22, 2017, Plaintiff returned to SOCH-ER complaining of chest pain and sinusitis, but she also reported "nausea, vomiting, and diarrhea, for the last few days" but no abdominal pain, constipation, abdominal cramps, or abdominal distension was present. Tr. 515-16.

Plaintiff had several medical evaluations during August 2017. On August 5, Plaintiff returned to Jericho Road for vaginal swelling and pain; she denied gastrointestinal symptoms. Tr. 544. Again, Plaintiff's bowel sounds were "normoactive. Abdomen [was] nontender." Tr. 545. Plaintiff's body

mass index was higher than previously recorded at 34.0-34.9. Tr. 546. On August 10, Plaintiff went to SOCH-ER for pelvic pain and rectal bleeding but denied "fevers, chills, abdominal pain or any other symptom." Tr. 528-29. Her "abdomen/GI" was "soft, non-tender, with normal bowel sounds. No distension or tympany. No guarding or rebound. No evidence of tenderness throughout." Tr. 530. Plaintiff's condition was "consistent with [a] herpes outbreak." Id. On August 15, Plaintiff returned to Jericho Road for an annual gynecological exam and denied any "food intolerance, indigestion, nausea, bloody stools, and vomiting." Tr. 547. She appeared "healthy and well developed" though "obese"; and her abdomen was "nontender." Tr. 548. On August 25, Plaintiff went to Jericho Road for jaw pain and denied any gastrointestinal symptoms; her bowel sounds were "normoactive"; and her abdomen was not tender. Tr. 550-51.

On September 28, 2017, Plaintiff presented to Santa Rosa Medical Group. Tr. 685. Plaintiff reported panic attacks, difficulty swallowing allegedly related to reflux, nausea, depression and anxiety. Tr. 687. She further reported "no significant weight change, good appetite . . . normal activity level, and no fatigue." Id. Her bowel sounds were normal; and her abdomen was soft, non-distended, and no tenderness. Tr. 688.

On October 13, 2017, Plaintiff presented to Gastroenterology

Associates of Pensacola Endoscopy Center of Pensacola (GAP-ECP); Dr. Hakim is one of the physicians. Tr. 695. Plaintiff complained she had difficulty with swallowing, chronic sinus problems, and a need to occasionally induce vomiting. Id. Plaintiff reported "[h]er reflux is significant. Occurs every day and is made worse with eating"; and she "regurgitates at least 12 times per week." Id. She had chronic "diarrhea with some cramping, abdominal pain for a number of years." Id. Although Plaintiff was not taking medication for the condition, she explained she was previously on Lomotil "with good control." Id. Plaintiff weighed 206 pounds. Tr. 697. Upon examination, Plaintiff's abdomen was normal, non-tender, no masses, and bowel sounds were normal. Tr. 697. She was diagnosed with IBS with diarrhea, epigastric pain, dysphagia, and GERD. Id. Plaintiff was prescribed medications and counseled about obesity-related diseases and conditions. Tr. 698.

On October 26, 2017, Dr. Hakim performed an EGD with biopsy to rule out Barrett's epithelium and any underlying pathology. Id. The gastric mucosa appeared "inflamed throughout with edema and erythema"; a biopsy was "obtained for Helicobacter pylon. Retroflexion in the cardia and fundus showed no additional abnormalities." Id.

On November 20, 2017, Plaintiff presented to Santa Rosa Medical Group for "dizziness, anxiety/depression." Tr. 674. Plaintiff reported that she

restarted Prozac two days earlier and experienced nausea; so, she stopped taking it. Tr. 676. Plaintiff admitted to adopting her fiancé's three children with special needs and the pressure on her to care for them. Id. She reported "no significant weight gain" or loss, a normal appetite, no dysphagia, no diarrhea, no constipation, no reflux or bloating, and the ability to retain bowel movements. Tr. 677, 680-81, 84. The assessment, in part, noted that Plaintiff's anxiety was "chronic" and "uncontrolled with Prozac caus[ed] isolated nausea." Id.

On November 27, 2017, Plaintiff presented to GAP-ECP again for a follow-up appointment. Tr. 690. The EGD was negative for metaplasia or dysplasia, mild chronic duodenitis, mild chronic focally active gastritis negative for H. pylori, and benign mid-esophageal biopsy. Tr. 690. Somehow, Plaintiff's dysphagia was resolved; but reflux, nausea, and vomiting continued, more so when she ate vegetables and salads but not when she ate eggs, breads, and potatoes. Id. Plaintiff continued to gain weight despite claims she was nauseous most of the time. Id. She claimed the Lomotil helped with cramping but not diarrhea. Id. Her abdomen was normal, non-tender; and bowel sounds were normal. Tr. 693. The medications were changed; and tests were scheduled. Tr. 694.

Then, a few days later, on December 1, Plaintiff saw Dr. Foreman to

be evaluated for SVT ablation. Tr. 704. She reported "dysphagia, nausea, vomiting, diarrhea" but "no recent changes in bowel habits and no constipation." Tr. 706.

### 2. Plaintiff's Medical Records 2018 - 2019

On January 8, 2018, Renee McPherson Salandy, Ph.D evaluated Plaintiff's medical record. Tr. 90-102. At the initial level, Dr. Salandy offered a finding that Plaintiff was not disabled. Id. Soon after, on February 26, 2018, Plaintiff returned to GAP-ECP and reported frequent vomiting and losing 35 pounds in a month. Tr. 755. The doctor noted a 20-pound weight loss since November. Id. Although Plaintiff had diarrhea with IBS, her colonoscopy with biopsies and stool studies were negative. Id. Plaintiff used Lomotil and said the diarrhea was significant at times but not too bad at other times. Id. As usual, Plaintiff's abdomen was normal, non-tender, and bowel sounds were normal. Tr. 758. Now, Plaintiff's diagnosis included "abnormal weight loss" and gastroparesis. Tr. 759. On May 17, 2018, Dr. Frank Walker evaluated Plaintiff's medical records at the reconsideration level and found she was not disabled. Tr. 105-120

Then, on October 22, Plaintiff presented for a follow up appointment to GAP-ECFP, reporting only occasional nausea but no vomiting and that she lost 55 pounds "all because of her eating habits changing." Tr. 841. Plaintiff's

exercise routine included running on a regular basis. Id. "Her diarrhea with her irritable bowel syndrome is stable"; and there was no significant abdominal pain. Id. Plaintiff's abdomen was normal, non-tender; and bowel sounds were normal. Id. The doctor advised continuing the current treatment plan and to follow-up in one year or sooner if needed. Tr. 844. Despite this assessment, just a couple of weeks later, on November 19, 2019, Dr. Hakim completed a Gastroparesis Medical Assessment Form with some inconsistencies. Tr. 834-35. Dr. Hakim opined that Plaintiff had persistent/recurrent abdominal pain, cramping, and tenderness; a poor appetite with weight loss; would need three to four unscheduled restroom breaks during an eight-hour workday; and would be absent from work about once or twice per month due to her GI issues. Id.

The following year, on August 12, 2019, Plaintiff followed up with GAP-ECP. Tr. 836. She now reported a decline in health, losing "another 14 pounds unintentionally," diarrhea alternating with constipation (at one point no bowel movements for two weeks), abdominal bloating when eating, fatigue, eating a lot of "junk food," nausea with occasional vomiting, and some dysphagia. Id. Plaintiff was advised to avoid all NSAIDs and scheduled for further testing. Tr. 840.

On December 9, 2019, Plaintiff presented for a follow-up visit. Tr. 987.

The results of the EGD showed "unremarkable duodenal mucosa, no evidence of celiac disease, focal goblet cell metaplasia negative for dysplasia or carcinoma and no active inflammation or eosinophils noted in the mid esophagus." Id. Plaintiff complained of some pharyngeal dysphagia but reported "not having much reflux or nausea or vomiting . . . [and was] following a gastroparesis diet much better now." Id. The report references Plaintiff's colonoscopy in November, which showed hyperplastic polyps, but biopsies were negative for inflammation, viral inclusions, or parasites and were otherwise unremarkable. Id. Plaintiff reported "intermittent diarrhea, alternating with constipation" but said she was "managing this well with diet and medications" and lost another five pounds. Id. She stated she was feeling well. Id. Plaintiff was advised to stop smoking, continue the medication regimen and gastroparesis diet, repeat the EGD in November 2020, get a colonoscopy in five to seven years, and consider nutrition management due to her ongoing weight loss. Tr. 989. The doctor noted, "Currently she feels she is doing better and, as long as weight remains stable, she can be monitored." Id.

3. The ALJ afforded Dr. Hakim's opinion the proper weight; and there is substantial evidence to support the ALJ's finding.

The ALJ found that Plaintiff has the residual functional capacity to return to perform light work, with certain exceptions. Tr. 22. Although

Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22-23. Plaintiff admitted to her doctors she was not following the dietary restrictions and, later, attributed her significant weight loss to her efforts to comply with the proper diet and exercise, as narrated above. This is particularly significant when taking into account, that during 2017, Plaintiff reported nausea, vomiting, and diarrhea but was instead gaining weight; her body mass increased from 31.89 to 34.0 or greater. Tr. 486, 547.

No particular weight was assigned to Dr. Hakim's opinion, but the ALJ articulated good cause for finding the Gastroparesis Medical Assessment Form was not persuasive as it was inconsistent with the objective medical tests and treatment notes. Tr. 24. The ALJ identified various medical records relating to Plaintiff's various gastric conditions and other similar ailments (B4F, B5F, B8F, B19F, B12F, B27F summarized in the above sections). Tr. 19, 22-23. Specifically, the ALJ summarized there was "no indication" Plaintiff "reported significant symptoms related to these impairments or that they were not treated successfully when treatment was sought" or that additional intervention was necessary. Id. The medical evidence shows that

Plaintiff's weight loss was a result of the dietary changes she made to improve her gastrointestinal issues. Id. At one point, Plaintiff weighed 180 pounds with a body mass index of 31.9. By early 2020, Plaintiff weighed 113 pounds, "which is consistent with a normal body mass index of 20.0." Id. "There is no indication . . . [Plaintiff's] history of obesity or current weight are negatively affecting her level of functioning and she has admitted she is capable of exercising regularly, including running." Id. The ALJ concluded that the medical evidence "shows [Plaintiff's] gastrointestinal symptoms are . . . under 'good control.'" Tr. 22. The ALJ reviewed the medical records documenting Plaintiff's "history of significant bowel symptoms related to irritable bowel syndrome and gastroparesis, including chronic pain and weight loss." Tr. 23. The ALJ extracted from the medical records that the increase in symptoms were related to the times when Plaintiff "abandons the gluten free diet and resumes eating 'junk' foods." Id. In fact, proper treatment and dietary improvements resulted in Plaintiff losing weight, having "only occasional epigastric pain and reflux"; and she "resumed exercising on a regular basis, including running." Id. "There is no indication . . . Plaintiff requires additional intervention for her gastrointestinal condition and her weight is described as stable." Id.

The ALJ outlined Plaintiff's various abilities. Plaintiff "provides primary

care for her young daughter on a daily basis" and "reported adopting her fiancé's three children all of whom have special needs." Id., p. 20. She can drive; reads; uses social media; watches television; and can manage her own personal care, household chores, errands, and medical care. Id.

Plaintiff alleged she could not work because of "ongoing nausea, vomiting, and diarrhea; episodes of SVT a few times per week; drowsiness and dizziness; and daily migraine headaches." Tr. 22. The ALJ found that the medically determinable impairments "could reasonably be expected to cause the alleged symptoms." Id. However, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22-23. Plaintiff testified that the gap in treatment from 2018 through 2019, was probably because she was busy with her cardiac problems. Tr. 49. But the record indicates that Plaintiff was not due for another consult with her GI physician for one year or "sooner if needed." Tr. 844. Plaintiff testified that she "cut out" certain foods from her diet because of a "gluten sensitivity" but that doctors were "telling her to put weight back on." Tr. 49-50. This is contrary to the medical reports advising Plaintiff to adhere to certain dietary restrictions designed to improve her gastric issues and lose weight, as explained above. Plaintiff testified that she

uses the bathroom approximately thirty times per day for approximately three to ten minutes or more at a time. Tr. 55. It is curious that Plaintiff gave this testimony on December 27, 2019, when just three weeks earlier she reported to her GI physician she did "not having much reflux or nausea or vomiting . . . following a gastroparesis diet much better now." Tr. 987. Plaintiff's doctor noted in the record at the time, "Currently she feels she is doing better and, as long as weight remains stable, she can be monitored." Id. At the supplemental hearing, in June 2020, Plaintiff testified that she uses the bathroom "up to two dozen times" per day for anywhere "from just a few minutes, to an hour." Tr. 78-79. There is sufficient evidence to support a finding that Plaintiff's statements were, at least, inconsistent with the medical record.

The ALJ summarized Dr. Hakim's opinions on the Gastroparesis Medical Assessment Form:

> He noted that the claimant has a history of irritable bowel syndrome with diarrhea, abdominal pain, weight loss, dysphagia, gastroparesis, nausea with vomiting, epigastric pain, gastrosohageal reflux disease, use of non-steroidal anti-inflammatories, gastritis, and Barrett's esophagus. He indicated that the claimant experiences drowsiness [and] sedation due to medications prescribed; she needs a job that permits ready access to a restroom; would need to take unscheduled restroom breaks approximately 3-4 times during an eight-hour workday; and she would be absent from work about once or twice a month in relation to GI issues.

Tr. 24. Given the ALJ's citations and explanations, it is clear the ALJ gave weight to Dr. Hakim's treatment notes and only found the medical assessment form was not persuasive because it contradicts Dr. Hakim's own treatment notes, the medical record overall, and Plaintiff's own testimony at the hearing. Id. The ALJ explained the objective medical tests and treatment notes "show . . . [Plaintiff's] condition is managed well with minimal intervention, her weight loss is the result of dietary changes she made in order to improve her health and gastrointestinal issues, and her ability to exercise regularly, including running." Id. Because there is substantial evidence to support the ALJ's findings the Commissioner's decision is due to be affirmed.

## VI.    Conclusion and Recommendation

It is respectfully **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision because it is supported by substantial evidence and premised on the proper legal principles. 42 U.S.C. § 405(g); Lewis, 125 F. 3d 1439. Finally, the case should be closed.

IN CHAMBERS at Tallahassee, Florida, on August 25, 2022.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

CASE NO. 3:20-CV-05953-AW-MAF

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).